DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY.

MARCH TERM, 1884.

---

JOSEPH WHARTON, PLAINTIFF IN ERROR, v. LUKE I. STOUTENBURGH, DEFENDANT IN ERROR.

1. In covenant, if *non est factum* is not pleaded, the plaintiff need offer no proof of the execution of the instrument.
2. Where a mining lease stipulated for raising annually a specified quantity of ore or to pay a stipulated rent—*Held*, under the provisions of the instrument in question, that the non-existence of the quantity of ore agreed to be taken out was no defence to an action for the rent.

---

On error to Supreme Court.

The suit was in covenant. The declaration was in substance as follows, viz. :

That March 6th, 1880, by an indenture of lease made between the plaintiff of one part, and the defendant of the other part, (" one part of which said indenture, sealed with the seal of the said defendant, the said plaintiff now brings here into court, the date whereof is a certain day and year therein mentioned, to wit, the day and year aforesaid,) a copy of which

151

said indenture is hereto annexed and made part of this declaration," the plaintiff did let to the defendant the exclusive right and privilege of entering upon, searching for, mining, digging, and carrying away any iron ore that might or may be found in or under all that tract of land known as the Stoutenburgh mining farm, containing about one hundred and ten acres, for the term of twenty years from the date thereof; that the defendant did covenant and agree with the plaintiff, among other things, that the defendant would pay or cause to be paid to the plaintiff the sum of sixty cents for every ton of twenty-two hundred and forty pounds of iron ore mined and carried away from said premises; that the defendants should and would mine or pay for two thousand tons of iron ore per year; that the rent or royalty for iron ore mined and carried away from said farm should be paid quarterly on the 15th days of April, July, October and January, and for all the ore mined in the quarter ending on the 1st of said months. By virtue of which said indenture the defendant, March 6th, 1880, entered upon the said premises demised, and was in the possession thereof, for the purposes aforesaid, until October 2d, 1882; that the plaintiff had kept all things in said indenture contained on his part to be kept, observed and performed.

There were three pleas, viz.:

*First.* That defendant had not broken the covenant in the *narr.* mentioned.

*Second.* That defendant could not at any time mine and carry away two thousand tons of iron ore, because there was not at the time of the demise, nor has there been at any time since, existing upon or under the said lands two thousand tons of iron ore within the meaning of the covenant, and the performance of the said covenant by him had always, from the time of the making thereof, been impossible, and that at the time of the making thereof such impossibility was unknown to the defendant, and he had no reasonable means of knowing or ascertaining the same.

*Third.* That as the alleged breach of covenant in the plaintiff's declaration, relating to the non-payment of a quarter's rent or royalty, that in and by a fair and proper working of the said mine the same became and was, before and at the commencement of the said quarter, completely exhausted, by reason whereof the performance of the said covenant by the said defendant had become impossible, and that at the time of the making said covenant such impossibility was unknown to the defendant, and that he had no reasonable means of knowing or ascertaining the same.

Replications : to the first plea, joinder of issue ; to the second and third pleas, the common traverse and issue.

For the plaintiff in error, *P. L. Voorhees* and *J. G. Shipman.*

For the defendant in error, *J. E. Stoutenburgh* and *Henry C. Pitney.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. This suit was for the breach of a covenant for the payment of rent. The case comes before this court on the record and on certain bills of exceptions sealed in the progress of the trial.

The first of these objections is pointed at the admission of the record of a chancery suit between these same parties. From an inspection of that record it appears that the bill was for the purpose of compelling the defendant to execute precisely such a lease as that which was declared upon, and a copy of which was appended to the declaration in the present action. The decree in this chancery proceeding commanded the defendant to execute such an instrument. This record was offered in evidence by the plaintiff at the trial of this cause, and it being admitted in the face of the defendant's objection, a bill of exceptions was sealed.

It is not apparent why, in behalf of the plaintiff, this piece of evidence was offered. It did not prove the existence of

the lease upon which the declaration was founded.    An order
of the Chancellor that the plaintiff in error should make such
an instrument did not prove that such an instrument had been
executed.    Nor could the decree of the Chancellor to that
effect have supplied the want of the demise declared · on, for
the declaration alleged, in the ordinary form, the making of
such a lease, so that at the trial, if it had been necessary to
show the truth of such allegation, the substitution in the tes-
timony of this decree for the lease would not have been allow-
able.    But such was not the attitude of the case at the trial,
for the due execution and existence of this lease were admitted
by the pleadings.    The first plea was *non infregit conventionem ;*
the second and third that the performance of the covenant was
impossible, and thus the deed in question was conclusively
admitted.    The record from the Court of Chancery, therefore,
did not effect the purpose for which it was offered, but, as it
could not be detrimental to the defendant, it can have no effect
in the case in its present stage.

Nor can the other offer of a defence that was overruled at
the trial avail the plaintiff in error.    That offer, as stated in
the bill of exceptions, was in these words, to wit: "The de-
fendant, to maintain the said issue on his part, offered to prove
that at the time the plaintiff alleges in his declaration in said
cause that the said supposed agreement or lease was made
there was not, nor has there been at any time since the alleged
execution of the said supposed agreement or lease, or during
the time mentioned in the plaintiff's declaration in this cause,
existing or being in, upon or under the said lands and prem-
ises mentioned and described in the said supposed agreement
or lease, iron ore to. the amount of two thousand tons, or to
any other amount, that could be mined or taken from the said
lands and premises ; that at the time the said plaintiff alleges
that the said supposed agreement or lease was made, the fact
of the non-existence of such iron ore in, upon or under the said
lands and premises, and the impossibility of the performance
of the covenants in the said supposed agreement or lease was
wholly unknown to the said defendant, and that the said de-

fendant had not any means of knowing or ascertaining the fact of the non-existence and want of iron ore in, upon or under the said lands and premises; that at the time the said plaintiff alleges said supposed agreement or lease was made, the said plaintiff represented to the defendant that the said mines contained, and that there was in, upon or under the said lands and premises large, rich and valuable deposits of iron ore, which were and could be easily and profitably mined and gotten thereon and therefrom, and that at the time the said plaintiff alleges that the said supposed agreement or lease was made, the said plaintiff well knew that there was not any iron ore in, upon or under the said lands and premises, or any part thereof."

So far as this proffered defence rests on the alleged non-existence of iron ore on the demised premises, it is, I think, quite clear that it has no admissible foundation. It has its origin in a misinterpretation of the lease itself. There is nothing in that instrument that will give a reasonable semblance to the notion that the parties agreed on the basis that iron ore to a certainty was to be found upon these premises, and much less is there any indication that the lessor intended to guarantee such a state of affairs. All the intimations of the contract are averse from such a construction. The covenant that the lessee will sink one of the shafts in the upper vein fifty feet lower than any one of the existing shafts then were, " the object being," to use the language of the lease, " to more thoroughly prove the ground for iron ore," and the provision that the lessee may terminate the letting on a six months' notice, but not, however, before such shaft has been sunk to the specified depth, have plainly that aspect. So there is a similar implication in the absence of any right in the lessor to put an end to the term. But the most decisive feature is apparent in the stipulation " to mine or pay for two thousand tons per year." This covenant is absolute, and stands aloof from any contingency or condition whatever. The lessee was aware that it was uncertain whether or not there was such a quantity of iron ore in this mine. All per-

sons know, that these ore beds are liable to faults and exhaustions, and with this knowledge the lessee agreed to take out the specified quantity, or, as a substitution, to pay the specified rent. In such a case the agreement does not depend upon a subject matter which, in the belief of both parties, has an existence; for here the existence of this ore was, on both sides, regarded as problematical. In such a state of affairs the lessee runs the risk of finding the ore on the premises, and is bound by his absolute agreement to pay the designated rent.

This construction is, in all respects, in harmony with the decided cases; for in all the precedents the distinction is drawn between an agreement to pay a royalty, which is held to be dependent on the existence of the ore out of which it is to arise, and an agreement to pay a fixed sum in lieu of such royalty, in which latter condition of things such rent is held to be collectible irrespectively of the state of the mine. The rule of law upon this subject is accurately stated by Mr. Wharton in his treatise on Contracts. 1 *Whart. on Cont.*, § 298. This author says: " But a specific agreement to pay rent is not vacated by the fact that the property leased turns out, without the fault of the lessor, of far less value than was supposed. This, as is elsewhere seen, is the case with leases of improved land where the improvements have been destroyed by fire, and the same rule is applied to leases of mines when the mine turns out to be unworkable, which, if there be a lease covenanting to pay a fixed rent is no defence on the covenant. On the other hand, where the rent is payable in the shape of a royalty on minerals in the soil, no royalty is payable when no minerals are found."

The same principle is propounded and illustrated in the following authorities, viz.: *Ridgway* v. *Sneyd*, 1 *Kay* 627; *Phillips* v. *Jones*, 9 *Sim.* 519; *Marquis of Bute* v. *Thompson*, 13 *M. & W.* 487; *Jefferys* v. *Fairs*, *L. R.*, 4 *Ch. Div.* 448.

With regard to the other branch of the offer made by the defence at the trial, and which is embraced in the foregoing citation from the bill of exception, and which relates to certain alleged fraudulent representations made by the lessor as

to the existence of valuable beds of ore on the premises demised, it is sufficient to say that there was no issue in the pleadings which would have justified the trial of such a contest. Besides, if the form of the record had admitted of such a trial, the result must have been adverse to the plaintiff in error, for he would, on that question, have been concluded by the record in the Court of Chancery in the suit already adverted to, and in which proceeding the *bona fides* of the lease had been expressly adjudged.

The judgment should be affirmed.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, DEPUE, DIXON, KNAPP, PARKER, SCUDDER, VAN SYCKEL, COLE, PATERSON, WHITAKER. 11.

*For reversal*—None.